who just want to hang around and listen to them later on. But to get more to the point, we have a traffic light system. Yellow light means you have two minutes left in your argument. When the red light comes on, we would appreciate it if you would just answer the question of the court or else conclude your argument. We've also read the briefs and record excerpts. We may not have gotten into the entire record, so we certainly appreciate citations to the record. The first case is number 21-10985, S.E.C. v. Novinger. And we'll hear first from Good morning. May it please the court, I'm Margaret Little from the New Civil Liberties Alliance representing Aaron Novinger and ICANN. With me today is Kara Rawlins. In 1972, the S.E.C. inaugurated a regime that has no parallel in American governance. The way this works is once the S.E.C. charges someone, they will lose their First Amendment rights unless they fight the agency to the finish. If you are able to successfully defend yourself in an S.E.C. action and you win, you are able to speak. If you unsuccessfully defend yourself in an S.E.C. proceeding and you lose and go to prison, you are able to speak. But if you settle, you lose your First Amendment rights. That can't possibly be constitutional. Three points are essential to understanding this case. S.E.C.'s gag order, even on consent, violates the First Amendment. It is a classic prior restraint, the most disfavored of all speech restrictions and prohibited by the Supreme Court precedents in Near v. Minnesota, Bantam Books, Nebraska Press Association, etc. It is further a content and viewpoint-based discrimination that it is axiomatic that governments cannot insist upon. It is also an understatement that there is no compelling government interest presented by the S.E.C. in this case, nor does it use the least restrictive means. In fact, the public interest operates wholly in favor of removing this gag. The S.E.C.'s briefing fails to cite a single Supreme Court authority that would support this coerced gag. The second is that under the law of this circuit, the S.E.C. cannot impose a gag. Just as parties cannot stipulate to subject matter jurisdiction, a district court is without power to enter an unconstitutional order. This comes up all the time in consent order cases. And that the best case for that is, one moment, here we go, I'm sorry, the legal Latin American Citizens v. Clements, 999 F. 3rd, 831, it's a Fifth Circuit case by Judge Higginbotham in which the court has said, even if litigants agree it does not follow that a federal court must do their bidding. Another case in the Eleventh Circuit which pertains to the law of this circuit under prior organization of the court is Stovall v. Cocoa, Florida, 117 F. 3rd, 1238, in which the Eleventh Circuit held that the court may not enter an unlawful or unconstitutional consent decree. Ms. Little, I'm sympathetic to your arguments on the merits, but the procedural posture here is you're challenging the judgment under 60B. 4 and 60B. 5. That's correct. So under 60B. 4, we have to show that there is a lack of subject matter jurisdiction or a failure of due process of law. So help me understand how the defects in the gag order qualify under 60B. 4. I'm happy to do so, Your Honor. Actually, 60B. 4 only provides that you have to set aside a judgment that is void. Okay. It says nothing about jurisdiction. It says nothing about due process of law. I guess I was thinking Now, Espinoza does have dicta, and it is dicta because, in fact, Espinoza was a student loan case where the lender had actual notice and there was jurisdiction. It did say in Espinoza that the 60B. 4 remedy is rare and applies where there is a complete lack of jurisdiction or lack of due process, but it goes on to say it also applies where there is a clear usurpation of power. In fact, this circuit has very clearly examined what the Supreme Court did and did not hold in Espinoza, and in Brumfield, this court recognized that the Supreme Court presented no opportunity to review lower court assertions concerning 60B. 4, and the case has no holding that is relevant to either jurisdiction or due process. I would also say if the SEC's view of the limitations of Rule 60B. 4 is correct, this court's decision in Carter v. Fenner could not have been entered. Carter's a very interesting case. It involved a tort settlement in which a federal court had issued a judgment on consent where both the plaintiff and the defendant agreed to a settlement of a minor's tort claim. Unfortunately, in that case, the district court had failed to examine the judgment, and there was no probate court approval for that settlement, an essential requirement under state law, and so that entered judgment was held void under 60B. 4. I get what you're saying. You go back to Brumfield because you mentioned that case, and I know that Judge Jones was the author of that case, so do you think Brumfield supports your argument that this is a 60B. 4 case? Absolutely. Brumfield makes it very clear that Espinoza did not chart the universe of claims under which 60B. 4 relief may be obtained. That case was about, I forget, it was a consent decree and whether the district court's order in the case exceeded the terms of the consent decree. Is that right? That is correct, Your Honor. Are you saying this case is like that? Well, this case is different in some ways. It's really a constitutional case. It is very clear, and if you go into the treatises, for example, Amgur or Corpus Juris Secundum, those treatises have held, or rather reported, cases that say that unconstitutional order is void, and they cite numerous cases. You will see them in the first footnote of our district court briefing, the whole litany of cases, but they're also cited in our briefing throughout. But clearly, if a court has entered an unconstitutional order, there must be a provision to set that aside. We have examined the history of Rule 60B. 4, and again, if the SEC's interpretation of Espinoza is correct, that would require this court to hold that the Supreme Court overruled Clapperot sub silentio, because that case was very similar to Carter v. Fenner, in which the court vacated a judgment that had been entered without having a necessary hearing required by statute. Clapperot says nothing about lack of jurisdiction. Clearly, the court had jurisdiction, and it says nothing about lack of due process. It was failure to follow a statute in which the Supreme Court vacated a ruling under 60B. 4. That issue, rather that decision, issued very shortly after the adoption of the federal rules, and so it carries special authority as to the range of relief that may be entered under the Rule 60B. 4. Doesn't Espinoza distinguish between void judgments and erroneous judgments? That's correct. Explain to me why this case doesn't fall on the side of erroneous judgments. Because it's void, and the district court had no power to enter into it in the first place. Is that true of every judgment that incorporates some kind of unconstitutional element? Certainly a coerced prior restraint. Absolutely. Okay. Some other Supreme Court authority on that is a case called Wilson v. Walker, in which the Supreme Court held that even when jurisdiction is established, if a court makes a decree which it has no power to enter, the decree is void under Rule 60B. 4, or the predecessor to Rule 60B. 4. We've also cited a case called Ex Parte Lang. So there's a ton of Supreme Court authority that would compel the district court to accept this. Explain why we should disagree with the Second Circuit and Romero. I would be most happy to. Romero is a great case. It's cited in every treatise. It held that, well, in Mike Miller for sure, and I think in other law treatises, and by the way, it is still being cited, not Romero, I'm sorry, it's Crosby. Crosby is being cited in every case. You're talking about Crosby, the older Second Circuit? That's correct. All right. But I'm talking about Romero on cert petition. Yeah, that is on cert petition to the Supreme Court. Your cert petition? It is, Your Honor. The decision in Romero is very flawed for a number of reasons. First, it created a deep circuit split. It did not follow its own precedent of an earlier panel in which the court had held that even when parties consented, and in that case they were private parties that had consented to an injunction, a court could not order a prior restraint and it must be set aside. The decision in Romero admitted that it was fairly clear why Mr. Romero would expect Crosby to control and, in fact, vacate the order, but then it went on to distinguish Crosby by saying, well, perhaps there was a problem there in which unnamed other parties had not been given notice of the ruling, and so that could be an alternate grounds of decision. We moved for reconsideration en banc and filed the entire Crosby file with the court to show that all parties had been given notice. The fact that the Second Circuit may be inconsistent with its own precedent won't get you cert, number one. Number two, Romero goes on to hold, does it not, that this SEC condition can't be attacked under 60B-4, right? It does. That's, again, by misconstruing Espinoza in a way that this circuit does not misconstrue. The opinion, you relied on Crosby, but it noted that Crosby preceded Espinoza and footed it 60B-4 ruling based on Espinoza and the language. So what's the specific way you say that it mischaracterized or misconstrues what Espinoza said? Well, the Romero panel decision did not even reach the issue of where there is a clear usurpation of power. That is directly, language directly taken from the Espinoza opinion. It is certainly the logic and holding of the Crosby decision earlier, and the Romero panel simply failed to address that issue. There are other circuits that disagree with this. The way that your cert, how do you have the cert question articulated? We have articulated because the Crosby decision, while the intra-circuit split is present, that is not the basis of our petition. It is in conflict with the Supreme Court decisions of Clapprott, Wilson, ex-party Lang, and other holdings such as Citizens United that says where speech restrictions are based on the identity of the speaker. That is all too often simply a means for government to control Congress. I'm trying to get at, you framed the cert question in terms of 60B-4 and Espinoza, or you framed it in terms of Romero, however it's pronounced, being contrary to Supreme Court precedent. I'm just, I mean, I can look it up. No, I'm happy to elucidate. It is certainly contrary to Supreme Court precedent. It is also contrary to the law of several other circuits and a state Supreme Court. The circuits are the Sixth Circuit in G&V Lounge, which holds that the government may not require a prior restraint as a condition of settlement of a case. In Davies, in the Ninth Circuit, that case holds that the government may not require someone to agree they will not run for public office in the future. That is an impermissible and unconstitutional condition. There's another Ninth Circuit case in Richards that says that the government may not require someone to refrain from criticizing a public official. Those were all raised immediately, right? They weren't raised in the context of 60B-4 years after the initial rulings, correct? Well, not every case. In fact, the SEC-Vibola case, which we cite, is a case where a court has set aside something that the SEC did not have power to enter under 60B-4. But yes, there are different rationales in terms of how you get there, but certainly the Romero decision is in conflict with the law in multiple circuits. Okay. All right, thank you. You have time for rebuttal. Thank you, Your Honor. Mr. Berger. Good morning, and may it please the Court, Jeff Berger for the Securities and Exchange Commission. Final judgments remain final unless they— That is correct. And you are not attempting to defend the SEC's rule that says—that binds a party to a consent decree never to voice opposition to the underlying facts, right? I don't think the court should get there in the same way the district court— You are not defending it, are you? I am defending it. You are defending the merits on the First Amendment decision of the SEC. Correct. It is consistent with the Supreme Court's decision in Rumery, which is the controlling decision regarding waivers of constitutional rights in settlements or consent judgments. The Supreme Court made very clear in Rumery that a defendant or any party can waive their constitutional rights and that that is not per se invalid. This court has accepted that in the Bennett decision. Had the defendants appealed this seasonably, would they have been able to challenge the merits of the decision? If they had taken a direct appeal from the settlement within 60 days—I just want to make sure I understand this question. Yes. Yes, they would have been able to challenge the constitutionality of it because it would be a direct appeal. That's kind of exactly what this court—excuse me, what the Supreme Court said in Espinoza unanimously. And I think what this court has said in cases like Mitchell Law— But that's on the assumption they would have been able to do it, and you would have still said it was a constitutional restriction? We would have argued in that situation that the Rumery balancing test is the controlling test in this situation where there has been a waiver of constitutional rights. And in this instance, putting aside direct appeal, if the commission were to attempt to enforce its contractual no-deny provision because of a suspected breach—if the commission did that, and I emphasize if— the district court at most under the terms of this contract would hear the argument that the commission has moved to vacate the judgment. At that point, the defendant or any settling defendant could raise any arguments they want, including any constitutional arguments. We are well aware of that. But 6db4 is not the right path here. The consent judgments were entered into in 2016 in both the Supreme Court in Espinoza and this court in a variety of cases both pre- and post-Espinoza. Let me ask you a question, and I won't get you completely off track here. But the appellants point out in brief that a petition has been before the SEC for a couple of years now to challenge the basis for this rule, and the SEC has taken no action on it. Is that correct? That is correct, Your Honor. Why is that? I unfortunately don't have what's going to be a fulfilling answer. I don't know why the commissioners— I mean, the SEC is busy imposing ESG requirements and disclosures. Apparently, it's promising to upend the stock market rules as we know them. It's been very aggressive in the past six to eight months, and yet it doesn't seem to care about a challenge that suggests that it may be violating the First Amendment with prior restraints. I don't have an answer for why the commission hasn't taken action. And I think that raises a problem because it's similar to the problem about the SEC ALJs and the fact that the SEC seems to be rather tone deaf to the constitutional consequences of the way it does business. If I could put aside the other issues you raised and focus on the no-deny policy, the fact is that under Roomery, such waivers of constitutional rights are allowed. So I don't think the commission's policy does violate the First Amendment at all. And again, I'm putting all the other issues you raised aside. It does not violate it under Roomery. The fact is parties are allowed to waive their constitutional rights, and under Roomery, as well as under Fourth Circuit law, Fifth Circuit law, as far as I know, every court has accepted that. In this particular instance, these defendants—and I'm getting a bit into the merits, but I do want to get back to 60B4—these defendants were represented by counsel. They litigated for over a year. They made an offer of settlement to the commission, which the commission accepted. And they participated in jointly filing or asking the court to enter that consent judgment. So they agreed to this. They disagree with it now, but it's been five years. At some point, judgments do need to remain final and cases do need to end. And the Supreme Court in this court has supported that view, that very narrow view of 60B4. So to go back to 60B4, let me give you a hypothetical. Suppose instead of agreeing to a, you know, not to speak, not to say certain things, the terms of the agreement were every year you have to publicly say that the SEC was justified in bringing the action. You had to say that every year as a condition for the settlement. Could you challenge that under 60B4? No, you could not. It's the same issue. Really? I'm sorry, Your Honor. No, so the SEC could make you sort of go into the town square every year and say, yay, SEC. My response to that, though, is— I know it's ridiculous, but, you know— No, no, no, no. It's not that it's—it's actually a good hypothetical, but—and it helps to isolate the point that this is a 60B4 question. The only grounds are subject matter or personal jurisdiction or due process. Nothing in your hypothetical raises a defect under either— May I remind you—let me just interject here because the original basis for the Supreme Court incorporating the First Amendment against the states was that it violated due process. Yes. If you go back to Gitlo, I believe it is. So due process does incorporate substantive rights. I agree, but I think the Supreme Court and this Court has been very clear that the due process issue at issue in Rule 60B4 is not a substantive due process. In Espinoza, which is—and it's not dicta. It's very clearly the holding. It said notice and opportunity. So I understand what Your Honor is saying about substantive due process. But in Brumfield, I wrote that Espinoza is not fully definitive, and I'm— Could I speak?  I didn't mean to cut you off, Your Honor. I actually think Brumfield supports our argument here. I think what Your Honor was pointing out in Brumfield—I feel a little silly telling you what Your Honor may have thought, but I think what it was pointing out was that Espinoza did not decide precisely what type of jurisdictional error will constitute the certain jurisdictional error Espinoza was talking about. And I think Brumfield, your decision in Brumfield, was pointing that out. But I think what's clear is that Brumfield started out by very clearly quoting the language in Espinoza and then saying that other errors will not afford relief under the narrow ambit of 60B4. And the issue in Brumfield, as Your Honor knows, was a subject matter jurisdiction issue in the sense that the court sort of expanded its original jurisdiction to go from just covering discrimination in private schools— Are you saying Espinoza was written broadly and Brumfield was written narrowly? I think that's one way of looking at it. I think Brumfield is dealing with a very specific type of jurisdictional issue, which is continuing jurisdiction in an institutional reform case. And I think what the court's concern, which to me fits squarely within Espinoza, was sort of a creeping of the mission, for lack of a better word, of a consent decree in institutional reform litigation. It had started out in Brumfield being about discrimination in private schools. And the concern was that that jurisdictional hook was used to cover what was actually a separate case concerning discrimination in public schools. But that's still all within the realm of subject matter jurisdiction. That is simply not what's happening remotely in this case. There's no effort to enlarge the district court's continuing jurisdiction. This is simply a matter of a term that was agreed to. Your Honor, can I just go back to your hypothetical for one thing? Because if there's an issue—meaning, let's say after year five of doing the town square crying— if there was an attempt to—for instance, he didn't show up one year and then the commission had to enforce or made the decision to enforce, that's when all of these First Amendment issues could come in, and that's exactly what Roomery suggested. That was the issue in Overbay. That was the issue in all of these cases applying this Roomery balancing test, including the Davies case that my friends mentioned. What if the condition of the settlement was you can only hire white people? You mean for your business or whatever? Yeah. I think it's the same issue in terms of 60B4. Could you challenge it through other means, particularly if there was an enforcement mechanism? Yes, but that is simply not what Espinoza was talking about. 60B4 is intentionally supposed to be narrow. But you're sticking to your gun, so I appreciate that. I think what you're saying is the only due process violation that you can bring up under 60B4 is a traditional due process violation of notice and lack of opportunity. Not to sound flip, but I'm not saying that. Espinoza said that, and this court has said that. It's been very clear that that's the type of issue. And I think it's important to talk about the Carter v. Fenner and the Claprock case that my friend mentioned. Carter's a Fifth Circuit case. It fits squarely within the procedural due process default judgment type case because the issue there is because the minor was not properly represented under Louisiana law. I forget the correct term under Louisiana law, but the adult acting on their behalf. It's like they weren't there. So under Louisiana law, the settlement was clearly a no. It would be the equivalent of an absent class member. In Claprock, my friends suggest in their brief that somehow the Supreme Court in Espinoza sub salientio overruled Claprock. So I think it's worth talking about Claprock because it provides a nice contrast. To begin with, let's just assume the Supreme Court is aware of its previous precedence when it's writing cases like Espinoza. But also, Claprock was a default judgment case. You had a person who wasn't there. They were imprisoned at the time. So whether that's deemed a personal jurisdiction issue or a due process issue, they did not have notice and opportunity to appear in court and to make whatever arguments. In fact, the default statute issue in Claprock allowed the government to basically denaturalize a citizen without even presenting any proof. So there's a clear procedural due process issue, which is why it fits squarely within Espinoza. One other thing about Claprock, it's a very, very fractured decision. Only two of the five justices in the majority even mentioned 60 v. 4. And even then, they didn't really stick to their guns, for lack of a better phrase, because they kind of walked through 60 v. 4 and then immediately said, well, even regardless of 60 v. 4, 60 v. 6 would provide an avenue for extraordinary circumstances. The other three justices viewed it as a procedural due process issue and would reverse the judgment, in essence, allow the imprisoned gentleman to have the ability to argue his denaturalization case in court. So it's not really even a 60 v. 4 case, so it just doesn't mean anything to say Espinoza somehow overruled it. This is also – I mean 60 v. 5 is also somewhat in play in this case, but I anticipate that what you would say is there are no new facts or law that would trigger 60 v. 5. But what if the Supreme Court comes out with a decision at some point saying, you know, there's the gag order or whatever, the no – whatever you call it, that that policy is unconstitutional? Could they then go under 60 v. 5? I mean there's a few issues that come up with 60 v. 5. One is the reasonableness standard of time comes into play. So that's always going to be an issue with 60 v. 5. I presume that's why 60 v. 4 is the preferred route here because there's effectively no time limit. Yes, there's – under RUFO and cases like it, there are – there's a set of body of law about when you can bring a 60 v. 5 claim in the face of change law. But one thing that would be a problem for them pursuing 60 v. 5 here is whether you sort of anticipated what – how the change could affect your language in the sense of – and here they agreed to the language. So they know it's out there. Well, if you say they agreed, I mean really SEC and civil enforcement is sort of Damocles of the regulated people. And we get cases all the time where the SEC has gone after Ponzi schemes and misuse of investor funds and that kind of thing. But then there's the other kind of case where they threaten somebody's brokerage license or they – or the mere threat of a violation of a certain set of rules is going to put somebody out of the business forever. And so your parties are really very helpless in a way that they might not even be if they had a criminal complaint brought against them. I have a couple of responses to that. And this is – so this is a different kind of situation than other kinds of consent decrees, it seems to me. I respectfully disagree with that, Your Honor, that it is a different situation. But even if I assume the premise, rumory covered this territory. It talked about that these types of consent judgments and waiver – I'm looking for rumory in your brief, and I didn't see it. I mean – We're the red brief, Your Honor. We cite rumory all over the place. You cited what? It's also – It's not in the table of – it's not in the – Well, I apologize, Your Honor. I'm using a shorthand. It's Town of Newton v. Rumory, and I've gotten a bad habit of referring to it by the defendant. No, I remembered that name, but I just – okay. There you go. We rely on it – Pass him. Yes, we rely on it heavily. So I don't know why I keep referring to it. Okay. But we do refer to it frequently, but rumory talks about difficult choices, and it recognizes that settlements can impose difficult choices and that that is constitutionally acceptable. And the court has restated that over and over and over, cases like Corbett, Burden-Crensher, Mazzanato, and also the Lake James case, which is a Fourth Circuit case, which I think is a good one for the court to look at. I did want to circle back to the Romero case. I think it is a correct decision. I think the fact that the Second Circuit denied the petition for review without even calling for the commission's response demonstrates that the Second Circuit did not see any intra-circuit split. That has obviously been petitioned to the Supreme Court. We'll see what the Supreme Court does with it. But I do think it is a model for this court. I think it is the correct decision under Espinoza. I think it's a pretty straight-line decision. Do you know if the court has called for a response to the cert petition? We've already filed our response. The government has already filed a brief in opposition, and, in fact, Romero has already filed a reply. So the court will be taking that up I think relatively soon. My guess is it will probably be this month given just the timing of how the court works with those things. Do you think it's likely to be dispositive of this case on the 60 v. 4 issue? That's what I was trying to get a handle on, the way that the cert question was articulated. Well, I think if you look at the papers that were filed in the Supreme Court, you'll see a pretty big divergence. Romero's question presented is framed entirely in terms of the First Amendment issues or how they see the First Amendment issues. The 60 v. part is a very small portion at the end of their brief. We think the question presented is entirely a 60 v. 4 issue, in part because that's how the Second Circuit ruled on the case, and that's also the reason why we think the court should not accept the case because there is no disagreement among the circuits regarding Espinoza, regarding 60 v. 4, regarding any of that. Every court in the country has been consistent in reviewing Espinoza, excuse me, in reading Espinoza the exact way that we read it because it's plain from the text. There's only two situations where a judgment can be void. To use the phrase, there's an exceedingly short list, and they make very, very clear that a judgment is not void simply because it is or may have been erroneous. The situation that's being raised by Mr. Novinger in this case, and I apologize if I'm mispronouncing it, is an erroneous judgment. I think your Honor's hypotheticals, at most those could be erroneous judgments, but that is not enough for voidness under 60 v. 4, and that makes perfect sense, particularly when you consider what the Supreme Court has been doing with regard to the term jurisdiction in the past 20 years. It's been trying to firm up the meaning of it to end what they believe justice is. But it really doesn't make sense when what you're talking about substantively is an unlimited prior restraint on disagreeing with the government under circumstances where one has been compelled to settle. I disagree that anyone— And that is, you know, that's the gravamen of First Amendment discussion, which we would consider on a matter of public concern under any circumstances. The town of Newton case, the Rumerie case, takes these types of settlement cases, these decisions, these waivers, out of that box that my friends want to put it in. And it is a different type of case because there is a waiver. I disagree that there's a compelled settlement here. This was a voluntary settlement. And yet if they're to that point, and sorry to interrupt, if the provision—if the Novinger said, look, I'll settle with you, but we can't do that, no speaking provision, I'm assuming a settlement wouldn't happen. A settlement wouldn't happen. That's the— Right. That's your policy. Policy the commission chose. So let me ask you this. Earlier you said, well, here are some ways they could actually challenge this on the merits, and the second one I understood, which is to say they violate it, and there's some enforcement, and so then you violate it. But the first one I didn't understand, which was you—a direct appeal. Well, on what basis would there be a direct appeal? I mean we would certainly fight that there would be a direct appeal because they waive their— No standing, yeah. Well, and they waive the right to appeal, which is yet another constitutional right that gets waived. I was responding to Judge Jones' hypothetical. No, I got you. But I'm just trying to think, how is this going to come up? Well, the way this is going to come up, and this ties into—and I spent my last minute on this— the enforcement mechanism in the provision, which I think is very important because it ties to the policy. The only thing the commission can do if Mr. Novinger or anyone else were to breach is to ask the district court to rip up the settlement and go back to trial, where he can deny as much as he wants. So in essence this is a venue control provision. I thought you said at one point in your brief that it wasn't even clear that the SEC would try to— if he went out and started, you know, writing op-ed pieces about how unfair the process was and he denied the challenges and so on, that you wouldn't even move to enforce the settlement agreement. That's correct, Your Honor. It is very— So basically you're just bullying until challenged, and then you're not going to do anything about it. Can I respond quickly? I mean, I disagree with the characterization, you may guess. What the commission can do is move to vacate the judgment. That is it. But the commission may decide not to, and the reason may be that the case is too old. The Novinger case is five years old. Evidence disappears. Memories fade. The Romero case was 16 years old. So it may very well be that the commission decides not to avail itself of— If that were the practice, then the issue wouldn't come up, right? The issue of the constitutionality of the case. That's true, but he would have also been able to speak. He would have denied without any consequence. And so the courts would be prevented from ruling on the First Amendment validity. That's true, but I'm also not clear what the First Amendment problem would be in that case. Oh, right. But I mean, there's a colorable First Amendment. I mean, I understand you take a different view on the merits. It's an interesting question. No, no. What I'm saying, though, is that the particular relief here, which is very narrow and very limited, is very tied to the policy. I understand. I'm out of time, Your Honor. In sum, the district court should be affirmed. Thank you. All right. Thank you. Ms. Little? Well, there's a lot to cover. I hope I can do it in five minutes. As far as the Vroomery case, that case involved— Let me ask you just to clarify. Assuming, taking everything you've said to its limits, what is it your client would want? To void the agreement that he entered into to go back to square one, and be able to fully litigate it all, or still be bound by the contours of the agreement but able to speak? Do you follow my question? Yes, absolutely. And it's the second, Your Honor. That's exactly how we filed it. We filed the consent order with the district court, and then we filed as an appendix the same order with that gag provision removed because it's unconstitutional, which is how courts have handled these matters. That was the case in the Crosby case. That is also the case in the Overby Fourth Circuit decision. They did not void that entire settlement in the police brutality case. What they said is that the person who had settled the case would be relieved of the ban on her . . . Different, but sometimes like in a criminal case, for example, people plead guilty all the time to a plea agreement which says you give up everything. There may be a carve-out. I give up everything, but I can appeal a sentence that's beyond the statutory max, or there's some other . . . We got all these cases, fights over, is the appeal bound by the agreement or not, but oftentimes what a person urges, well, I didn't give up my constitutional right, so I guess my point, I know it's different, but I'm trying to envision whether he said, well, if you try to protect that in the original agreement, probably there wouldn't be an agreement. As far as the SEC's answer to the earlier question, it does not, in fact, only move to reopen or maybe not even do that and then have the case reopened. In fact, it enforces the agreement in the AFPF amicus brief that is filed in this case, gives examples of the SEC going out and policing people's speeching, threatening reopening, and requiring them to engage in corrective speech. Well, at some point, isn't somebody going to have to just go out  Well, the problem with that, Your Honor, is the collateral bar rule, which operates in this circuit, operates in the Second Circuit, and under the Supreme Court decision of Walker v. Birmingham also prohibits that. In that case, Dr. Martin Luther King had been denied a permit to march. He went ahead and marched, and the Supreme Court said, you can't just go ahead and violate a court order. You have to challenge that order in the court in which it was entered, which is what we have done here. What do you say about the Rumory case? The Rumory case is, it did not, by the way, just blanket hold that you can waive constitutional rights. They said there was a balancing test, and in that case, it was a potential counterclaim. Every single case that the SEC has cited to you in this court or in the Second Circuit where they say you can waive constitutional rights involve one of four things. In a settlement, you may waive your right to a trial. Yes, you always waive your right to a trial in a settlement. You waive your right to a jury trial, same point. You always waive your right to a jury trial. You waive your right to an appeal. That's the nature of a settlement. Rumory involved a potential cross-claim, and what the court said, there's not necessarily a blanket right to waive a constitutional right in that case, but the counterclaim was intertwined with the matter being settled, and so it was appropriate for that to be included in the bundle of things that were being settled. Nothing in Rumory extended into the future. It didn't say you have no right to bring a future 1983 claim on different grounds. It did not ban speech in the future, and so it is quite distinguishable, and if you look at every single case the SEC cites, it involves the cessation of a conflict as part of a settlement, and when the constitutional right pertains to the necessary cessation of those proceedings, then it is permissible, not beyond that, and the SEC has not cited to this court a single Supreme Court case which permits a ban on future speech as a permissible condition of settlement. All right. We have your argument. Thank you very much.